IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **DA-HEEM RODGERS; TOMMY MAHAN;** ) <br> **MELVIN MOORE; PERCY KELLY; JIMMY** ) <br> **HARDY;  LEAUNDRA SPENCER; RAYVON** ) <br> **HENRY; TEFFNEY SPEARS WILLIAMS;** ) <br> **DARREN DEWAYNE MORRISON;** ) <br> **RODNEY HILL; GARY GOFF;  JAMES** ) <br> **CASH; JERRY SMOOT; SONJIA SPIGNER;** ) <br> **WILLIE TRAVIS;  DEWEY A. PRUITT;** ) <br> **CHRIST BOLDEN; JOHN  O. BANKS, III;** ) <br> **TONY TURNER; and DAVID HARRIS, on** ) <br> **behalf of themselves and similarly situated** ) <br> **employees,** ) <br> ) <br> Plaintiffs. **)** <br> **)** <br> **vs.** ) <br> ) <br> **AVERITT EXPRESS, INC.,** ) <br> ) <br> Defendant. ) | Civil Action Number <br> **7:06-cv-1980-UWC** |

## MEMORANDUM OPINION
## ON COLLECTIVE ACTION CERTIFICATION

This action was commenced under the the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, *et seq*., by twenty (20) current drivers, switchers and/or conveyor monitors employed by Averitt Express, Incorporated. ("Averitt").  Plaintiffs allege that Averitt is violating the FLSA by willfully failing to compensate them fully for hours worked in excess of forty hours in a given work week.  Presently before the

1

Court is a motion by Plaintiffs, (Doc. 23), to conditionally certify an opt-in class and facilitate class notice. *See* 29 U.S.C. § 216(b).

For the reasons set forth below, the Court finds that Plaintiffs' motion is due to be granted.

## I. Factual Background

Averitt provides dedicated transportation services for its clients. This means that Averitt employs truck drivers who transport goods from its clients' facilities to various delivery points (outbound services) and from various pick-up points to its clients' facilities (inbound services). These services are called "dedicated" services because Averitt drivers are assigned to only one client and Averitt maintains separate bases of operation at each client's facility.

As drivers, Plaintiffs provide dedicated services for various Averitt clients, the largest of which is Mercedes Benz U.S.I. ("Mercedes"), which operates two automobile manufacturing plants located adjacent to each other in Vance, Alabama.[1] These drivers transport items from various suppliers and pick-up points to Mercedes.

---

[1] Another client is the Ogihara Company, a Birmingham manufacturer that produces automotive parts. Averitt employee-drivers transport parts from Ogihara to Mercedes and to the Honda automobile manufacturing facility located in Lincoln, Alabama. Ogihara drivers are members of the putative class defined by Plaintiffs.

The Mercedes drivers are divided into two categories, mileage drivers and hourly drivers. Mileage drivers are also referred to as over-the-road ("OTR") drivers. They pick up items located a considerable distance from the Mercedes plants. Indeed, the OTR drivers "primarily" pick up from locations outside the State of Alabama. In contrast, the "hourly" or "local" drivers pick up items located closer to the Mercedes plants. Some of the closer sites are also located outside Alabama.

Some of the locations where the drivers pick up items are called "sequencing" facilities. These facilities serve as a holding point for parts picked up directly from the manufacturer. Specifically, a driver may pick up parts from a manufacturer and deliver them to a sequencing facility. When Mercedes needs the parts, a driver then picks up the parts from the sequencing facility and delivers them to Mercedes. One of these sequencing facilities, Ai3, is located a short distance from Mercedes. Ai3 is not owned by Mercedes.

The switcher position is also referred to as the "yard driver" or "yard truck" operator position. The yard drivers only transport items between the two Mercedes plants or solely between various points at Ai3. The switchers do not travel off their designated sites.

The conveyor monitor position involves observing the automatic offloading of freight from Averitt vehicles at Mercedes. Some of Averitt's trailers contain an

automatic freight offloading mechanism, including a conveyor belt.  The conveyor monitors must observe the offloading process to ensure that technical problems are abated.  Often, conveyor monitors bid for and hold positions as drivers.

All of the plaintiffs work from 45 to 55 hours per week and are not paid overtime.

Plaintiffs Rodgers and Harris deliver parts from the Ai3 warehouse to Mercedes; thus all of their runs are intrastate.  Putative class members Cedric Ervin, Johnny Dukes, Vincent Epperson, Joe Franklin, Alfred Foster, James Lewis, Jr., and Charles W. Chambers also deliver parts from the Ai3 warehouse to Mercedes.

In contrast, Plaintiffs Mahan, Moore, Kelly, Hardy, Spencer, Henry, Williams, Morrison, Hill, Goff, Cash, Smoot, Spigner, Travis, Bolden, Pruitt, and Turner make intrastate daily runs between local suppliers and Mercedes.  Putative class members Jonathan Welch, Philip Green, Maurice Gunter, Larry Fowler, Byron Keith Hyche, Tamara Kyles, Anthony McGlown, Larry Patterson, Angie Salazar, Joseph Trull, Robin Swallford, Kerry Washington, Raymond Wilson, Alford Woods, and Carl Jackson make similar runs.

Putative class members David Dallas, Jeff Ferguson, and Eugene Spurger are regularly assigned to jobs exclusively in the Mercedes plant.

Putative class members James Lewis and John Brown make deliveries from the

Ogihara facility in Birmingham to other companies in Alabama.

## II. The Putative Class

Plaintiffs seek to certify an opt-in class defined as follows:

> All current and former hourly drivers/switchers assigned to an intrastate route and all hourly conveyor monitors and who have worked as a driver/switcher or conveyor monitor for the Defendant at its MBUSI or Ogihara dedicated service operations since September 29, 2003.[2]

(Doc. 23, Pls.' Reply Br. 1-2.)

## III. The Applicable Law

As a general rule, the FLSA provides that all employees who hold jobs in interstate commerce are entitled to overtime compensation at one and a half times their regular rate for all hours in excess of forty hours per week. 29 U.S.C. § 207. However, there are several important exemptions from this general rule.

For example, the overtime provisions do not apply to employees for whom the Secretary of Transportation ("SOT") has power to establish qualifications and maximum hours of service rules under the Motor Carrier Act, 49 U.S.C. § 13501 *et*

---

[2] Initially, the Plaintiffs' proposed class definition did not include any references to the Ogihara employees. After Averitt filed its brief in opposition to the certification motion, Plaintiffs amended their proposed class definition to included Averitt employees located at Ogihari. Because the complaint does not appear to include any references to the Honda plant, the Court will modify the class definition to clarify that the class includes **only** those employees located at Ogihara who make deliveries to Mercedes.

*seq.* This "motor carrier" exemption applies only if the employee: 1) is employed by a carrier subject to the power of the SOT to establish qualifications and maximum hours of service; 2) is engaged in activities that directly affect the operational safety of motor vehicles, such as a driver, and 3) is assigned to a vehicle that transports property on public highways in <u>interstate</u> or foreign commerce. 29 C.F.R. §§ 782.2(e), 782.2(b)(2).

Drivers who are engaged only in the <u>intrastate</u> transportation of goods are generally entitled to overtime compensation. However, pursuant to Department of Labor ("DOL") regulations, intrastate drivers may fall within the motor carrier exemption under certain conditions. 29 C.F.R. § 782.7(b)(1). Specifically, "[t]ransportation within a single State is in <u>interstate</u> commerce within the meaning of the Fair Labor Standards Act where it forms a part of the 'practical continuity of movement' across State lines from the point of origin to the point of destination." *Id*. (emphasis added). Thus, some drivers who work only <u>intrastate</u> routes are not entitled to overtime compensation.

A driver who works solely on <u>intrastate</u> shipments or vehicles during a workweek is not entitled to overtime compensation if the carrier is involved in <u>interstate</u> commerce and the driver could reasonably be expected to make an <u>interstate</u> run or otherwise perform in the carrier's interstate activities. The

requirement that the driver could reasonably be expected to make an interstate run "means more than a remote possibility." *Garcia v. Pace Suburban Bus. Serv.*, 955 F. Supp. 75, 77 (N.D. Ill. 1996) (citing *Reich v. American Driver Serv., Inc.*, 33 F.3d 1153, 1156 (9th Cir. 1994)). The exemption from overtime compensation applies only where the employee's actual job duties, regularly or from time to time, require performance of activities that affect directly the safety of vehicles operating in interstate commerce, regardless of how frequently or infrequently those activities arise. 29 C.F.R. § 782.2(b)(3). Additionally, an employee is exempt for any week in which those exempt duties are performed. *Id*.

As with all FLSA exemptions, the employer has the burden of proving that the motor-carrier exemption applies to a particular employee; and overtime exemptions are construed narrowly, against the employer. *Corning Glass Works v. Brennen,* 417 U.S. 188, 196 - 97 (1974); *Avery v. City of Talladega,* 24 F.3d 1337, 1340 (11th Cir. 1994). The application of an exemption is "'**limited to those establishments plainly and unmistakably within their terms and spirit.**'" *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279 ASI LJO, 2005 WL 2436477, * at 7 (E. D. Cal. Oct. 3, 2005) (emphasis added) (citing *Bilyou v. Duchess Beer Distrib., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002)).

Section 16(b) of the FLSA authorizes actions for unpaid overtime

compensation against an employer "by any one or more employees for and **on behalf of himself or themselves and other employees similarly situated."** 29 U.S.C. § 216(b) (emphasis added). Thus, opt-in collective actions are authorized under the statute [3] and the more stringent class action standards, embodied in Federal Rule of Civil Procedure 23, are inapplicable. *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir. 1975).

To maintain an FLSA collective action, the named plaintiffs "**need only show 'that their positions are similar, not identical,' to the positions held by the putative class members**." *Grayson v. K-Mart,* 79 F.3d 1086, 1096 (11th Cir. 1996) (citing *Sperling v. Hoffman-LaRoche,* 118 F.R.D. 392, 497 (D. N.J. 1968))

In a collective action under the FLSA, the court utilizes a two-tier process. At the first stage, called the "notice stage," the court makes a determination, based on the pleadings and affidavits on file, of whether notice of the action should be given to potential class members. The standard is fairly lenient: the court must be satisfied that there are other employees who wish to opt-in, and that their positions are similarly situated to that of the original plaintiffs.[4] *Anderson v. Cagle's, Inc.,* 488

---

[3] "No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b)

[4] To show "similarly situated" positions at the notice stage, the named plaintiffs need only establish that they and the putative opt-ins perform the same tasks under the same conditions.

F.3d 945, 952 - 53 (11th Cir. 2007) (citations omitted); *Dybach v. State of Fla. Dept. of Corrections,* 942 F.3d 1562, 1567 -68 (11th Cir.1991). If these two requirements are satisfied, the court <u>conditionally</u> certifies a class. Court-supervised notice of the pendency of the action is then given to the potential class members, and they are afforded an opportunity to "opt-in" the action.

The second stage of the process is activated by the Defendant's filing of a class decertification motion following the completion of discovery. At this stage, the court makes a determination of whether the named plaintiffs and the opt-ins are similarly situated, based on a fully developed record. If they are not found to be similarly situated, the action is decertified, the opt-in plaintiffs are dismissed without prejudice, and the named plaintiffs proceed to trial on their individual overtime claims. *Hipp v. Liberty Nat'l,* 252 F.3d 1208, 1218 (11th Cir. 2001); *Cameron-Grant v. Maxim Healthcare Servs.,* 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

## IV. Analysis

It is clear that the named Plaintiffs and the putative class members are similarly situated, and that other Averitt employees wish to opt-in to this action. Averitt does not seriously argue otherwise. Rather its position is that the motor carrier exemption applies; and that in any event, individual issues predominate and should preclude

---

*See Anderson.,* 488 F.3d at 952.

the certification of this action as a collective action.

At the notice stage of this case, a determination of the applicability of the motor carrier exemption would be premature. Discovery is incomplete. A motion for decertification or summary judgment, after the completion of discovery, is the appropriate time to address that issue. *See Cameron-Grant,* 347 F.3d at 1243 n.2. By way of example, it is far from clear, based on the affidavits in the record, that in each quarter since October 1, 2003, each of the Plaintiffs could reasonably be expected to make one of the carrier's interstate runs. Some of the affidavits would suggest otherwise. Indubitably, on the present record, the court cannot "plainly and unmistakably" determine if the exemption applies to any or all Plaintiffs in this litigation. *See Aguayo*, 2005 WL 2436477, at * 7-8. Rather, at this early stage of the class proceeding, the inquiry is solely whether Plaintiffs have established that they are similarly situated. *See id*. The answer to that inquiry is in the affirmative.

The fact that individualized determinations may be required is not a barrier to certification as a collective action. First, it is less than certain that individualized determinations will be required. Based on the evidence in the record, it may well be that determinations can be made with respect to discrete subgroups. Second, assuming the necessity for individualized determinations, these arguments and evidence are more appropriately presented in a second stage motion for

decertification.

### III. Conclusion

Because Plaintiffs have established that they are similarly situated consistent with the requirements of FLSA, Plaintiffs' motion for class certification will be granted by separate order.

_____
U.W. Clemon
United States District Judge