# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
## (Western Division)

| | | |
|---|---|---|
| Da-Heem Rodgers, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **7:06-CV-01980-UWC** |
| | ) | |
| Averitt Express, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................6

RESPONSE TO DEFENDANT'S ALLEGED UNDISPUTED FACTS ...............10

    A.    Averitt's MBUSI Operation ................................................................10

    B.    MBUSI Parts Delivery Processes ......................................................11

    C.    MBUSI Local Suppliers.....................................................................11

    D.    Ai3...................................................................................................12

    E.    Other Logistics Supplies ..................................................................13

    F.    Job Duties of Local Fleet ..................................................................14

    G.    Ogihara..............................................................................................16

    H.    Classification of Local Drivers .........................................................16

    I.    FLSA Compliance.............................................................................16

  ARGUMENT .......................................................................................................17

A.    Defendant's Universal Motion for Summary Judgment ...............................17

1.    DOL/DOT jurisdiction................................................................................18

2.    Averitt drivers who are assigned to intrastate routes do not have a reasonable expectation of driving in interstate commerce...........................19

B.    Defendant's Alternative Motions for Summary Judgment .........................20

1.    Defendant cannot show it acted in good faith and without willfulness when it improperly classified Plaintiffs as exempt from the FLSA.............21

2.    If any Plaintiffs are exempt from the FLSA, the period of exemption is week-by-week, not for a 4-month period ....................................................23

3.      Defendant cannot demonstrate that routes to Ai3, ARD, ARD Fuel
        Tanks, ARD/JVC, Borgers, Decoma, AGC, Brose and/or Span are
        interstate routes ................................................................................................24

        a.      Ai3 .................................................................................................19

        b.      ARD routes, including ARD, ARD Fuel Tanks and ARD/JVC .........20

        c.      Borgers ...........................................................................................21

        d.      Decoma ...........................................................................................23

        e.      AGC.................................................................................................24

        f.      Brose................................................................................................25

4.      A determination regarding whether floaters are exempt from the FLSA
        cannot be made until the Court rules on the inter- vs. intrastate status of
        the facilities, above........................................................................................25

5.      Alternative motion for summary judgment for individual Plaintiffs ...........26

CONCLUSION ........................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Alice v. GCS, Inc.,*
    **Slip Op. No. 05-C-50132, 2006 WL 2344958 (N.D. Ill., Sept. 14, 2006)........25,**
    **……………………………………………………………………………...28,30, 31**

*Allen v. Board of Public Educ. for Bibb County,*
    **495 F.3d 1306, 1323 (11th Cir. 2007)…………………………………………8, 21**

*Arnold v. Ben Kanowsky, Inc.,*
    **361 US 388, 392 (1960) ...............................................................................................34**

*Auer v. Robbins,*
    **519 U.S. 452, 462 1997)…………………………………………………………..34**

*Chao v. First Class Coach Co., Inc.,*
    **214 F. Supp.2d 1263 (M.D. Fla. 2001)…………………………………………..20**

*Christensen v. Harris County,*
    **529 U.S. 576, 587-88 (2000)……………………………………………………24**

*Crooker v. Sexton Motors, Inc.,*
    **469 F.2d 206, 211 (1st Cir. 1972)……………………………………………...23**

*Duncan v. Brockway Standard, Inc.,*
    **1992 WL 510256 at *5 (N.D.Ga. Sept. 21, 1992)……………………………..21**

*Dybach v. State of Fla. Dep't of Corrections,*
    **942 F.2d 1562, 1567, n.6 (11th Cir. 1991)……………………………………..21**

*IntraComm, Inc. v. Bajaj,*
    **492 F.3d 285 (4th Cir. 2007)……………………………………………………..34**

*Joiner v. City of Macon,*
    **814 F.2d 1537, 1539 (11th Cir 1987)……………………………………………21**

*Kimball v. Goodyear Tire & Rubber Co.,*
    **504 F.Supp. 544, 547-48 (E.D.Tx.1980)…………………………..24, 25, 31, 32**

***Levinson v. Spector Motor Servs.,***

**330 U.S. 649, 685 (1947)**……………………………………………………**23**

*Morrison v. Quality Transports Servs., Inc.,*
**474 F.Supp.2d 1303, 1309**……………………………………………**17, 18**

*Reich v. Am. Driver Serv., Inc.,*
**33 F.3d 1153, 1156 (9th Cir. 1994)**……………………………....**17**

*Rodriguez v. Whiting Farms, Inc.,*
**360 F.3d 1180, 1184 (10th Cir. 2004)**………………………………**34**

*Roger Cartage Co. v. Reynolds,*
**166 F.3d 317 (6th Cir. 1948)**………………………………………..**23**

*Saldibar v. Delray One, Inc.,*
**Slip Copy, 2008 WL 755265**……………………………… **9, 25, 34**

*Schaefer v. Indiana Michigan Power Co.,*
**358 F.3d 394 (6th Cir. 2004)**…………………………………………**34**

**Federal Rules**

5th Cir. 1969……………………………………………………**24, 29**

**Federal Regulations**

29 C.F.R. § 782.2(b)(3)………………………………………**passim**

29 C.F.R. § 782.7(b)(2)………………………………………**25, 26,30, 31**

49 C.F.R. § 376.2(k)……………………………………… **25**

Plaintiffs in the above-styled action file this memorandum in opposition to Defendant's Motions for Summary Judgment.[1]

## **INTRODUCTION**

The Defendant in this action filed a motion for summary judgment and/or 34 alternative motions for partial summary judgment. Defendant's Motions not only fail to address all relevant facts but also misinterpret the law to be applied. Plaintiffs, therefore, dispute that Defendant is entitled to Summary Judgment as a matter of law on any of the issues Defendant has put before this Court. Indeed, the facts, when properly applied to the law, warrant a finding that Plaintiffs are entitled to Summary Judgment for all work weeks in which they were assigned to drive intrastate routes and did not drive an interstate route.[2]

Defendant's universal motion for summary judgment (Doc. 98) contends that Plaintiffs are all subject to DOT regulation, and thus properly exempt under the Motor Carrier Act for the entire relevant period of this action. (Doc. 98, Sec. B) Simply put, Defendant's assertions are incorrect. An employee is either

---

[1] Plaintiffs hereby incorporate, by reference, Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs' Memorandum in Support of Their Motion for Alternative Summary Judgment, and Plaintiffs' Evidentiary Submission in Support of Their Partial Summary Judgment. (Docs. 95, 96, 97).

[2] For purposes of this response brief, the terms "interstate route" and "transport goods in interstate commerce" encompass both transporting goods across state lines and/or driving within a single state while transporting goods in the practical continuity of movement in interstate commerce as defined by the Motor Carrier Act.

entitled to overtime or not, for specific periods of time under the Motor Carrier Act. (See, 29 C.F.R. § 782.2(b)(3), calling for a week-by-week analysis based on an individual's activities). Further, the employer bears the burden of showing that *each individual employee* is engaged in activities that directly affect the operation of motor vehicles in interstate commerce in order to find the employee exempt from the FLSA. *Id.* Finally, in order to demonstrate that Plaintiffs assigned to intrastate routes are subject to the MCA, the Defendant must show that the Plaintiffs may be called upon to drive in interstate commerce. *Id.* This showing the Defendant cannot make. In fact, Defendant admits that its method of assigning routes by seniority gives both the Defendant and the Plaintiffs an expectation that a driver will remain on a given route for a six-month period. (Doc 97, Ex. K, Smith Depo., pg. 129-131, 133). As such, Defendant's assertion that a driver may be called upon at any time to drive an interstate route is, at best, disingenuous. Accordingly, Defendant's universal motion for summary judgment is due to be denied.

Defendant's alternative motions for partial summary judgment (Doc. 98) assert that its decision to deny Plaintiffs overtime was made in good faith, and was not willful (Doc 98, pg. 3); that Plaintiffs who have driven interstate routes are subject to a 4-month exemption period (Doc. 98, pg. 3-6); that routes to the Ai3, ARD, ARD Fuel Tanks, ARD/JVC, Borgers, Decoma, AGC, Brose, and Span

facilities are interstate routes, and that all Plaintiffs who drove routes to those facilities are subject to a 4-month exemption period (Doc. 98, pg. 3-6); that Plaintiffs who were assigned duties as a "floater" are subject to a 4-month exemption period (Doc. 98, pg. 6); and that several individual Plaintiffs are exempt for the entire period of their employment, or in the alternative, are subject to a 4-month exemption period, for any period of employment during which he worked as a floater, was assigned to interstate routes,[3] or was subject to being called upon to take such assignments. (Doc. 98, pg. 6-20).

All of Defendant's alternative motions for partial summary judgment fail. First, Defendant cannot offer sufficient proof to demonstrate it acted in good faith or that its actions were not willful. Furthermore, this is a matter better left to the fact finder. *See, Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1323 (11th Cir. 2007).

Second, a 4-month exemption period for Plaintiffs who did travel in interstate commerce is contrary to the law. Plaintiffs are subject to a week by week exemption or, in the alternative, a 14/15-day exemption period. (29 C.F.R. § 782.2(b)(3); See also, Exhibit A, FMCSA Publication).

---

[3] According to Defendants in their brief, this includes the routes Ai3, ARD, Span, Borgers, Decoma, Brose, and AGC. For the reasons described in Section II,C of this brief, these routes are properly classified as *intrastate* routes and thus any alternative motions for partial summary judgment involving these routes should be denied in their entirety.

Third, the manufacturing, assembly, and/or sequencing processes that take place in  the Ai3, ARD, Borgers, Decoma, AGC, Brose, and Span facilities transform the nature and value of the goods, thus causing them to come to rest within the state and be removed from the stream of interstate commerce.  In addition, Defendant has failed to demonstrate that the shipper of goods to ARD had any fixed and persisting intent for the goods to continue on to MBUSI.  Further, with regard to Ai3, the Defendant makes a confounding argument that products already entered into MBUSI's inventory, and already marked "received" by MBUSI continue on in the flow of interstate commerce when they are moved from MBUSI's storage building to MBUSI's production line.  *See Saldibar v. Delray One, Inc.¸ Slip Copy, 2008 WL 755265* at \*3 (when goods are delivered from out of state to a storage facility, intrastate transportation of the goods from the storage facility does not constitute interstate commerce if shipper had no fixed and persisting transportation intent beyond the terminal storage point at time of shipment).

Fourth, *even if* this court finds the floater position to be an exempt position[4], floaters are subject to a week by week exemption, or in the alternative, a 14/15-day exemption.  (29 C.F.R. § 782.2(b)(3)); See also, Exhibit A, FMCSA Publication).

---

[4] Plaintiffs do not believe it is possible to determine whether a floaters is an exempt position, until the Court has ruled on the inter- or intrastate status of the facilities listed above.

Finally, Defendant's separate alternative motions that name individual plaintiffs fail because it improperly applies the Motor Carrier exemption to an individual's entire period of employment, when the law is clear that the exemption depends on the individual's activities for each week of employment. Furthermore, the applicable period of exemption for those specific plaintiffs who crossed interstate lines is week by week, or in the alternative, a 14/15-day period.[5] (29 C.F.R. § 782.2(b)(3); See also, Exhibit A, FMCSA Publication). Accordingly, Defendant's Alternative Motions for Partial Summary Judgment also should be denied.

## RESPONSE TO DEFENDANT'S ALLEGED UNDISPUTED FACTS[6]

A.    Averitt's MBUSI Operation.  Admitted.

B.    MBUSI Parts Delivery Processes.  Admit first sentence of first paragraph.  Some, but not all of the parts delivered to MBUSI, are manufactured to meet MBUSI's specifications. (Doc. 98, Ex. 20, Freeze Aff. ¶13).  Some parts, like those at AGC, are sold by suppliers to entities other than MBUSI, such as to Honda, Hyundai, and Mitsubishi. *Id.*  Admit last sentence of first paragraph.

---

[5] Though Defendant argues the exemption also applies to "floaters," as stated above, Plaintiffs do not believe a determination on the exempt status of a "floater" can be made at this time.

[6] Plaintiffs hereby adopt and incorporate by reference their Statement of Undisputed Facts and evidentiary submission in support of their Motion for Partial Summary Judgment, filed on July 17, 2008.  (Docs. 95, 96, 97).

Admit second paragraph with clarification. MBUSI deems a part "received" when it arrives at Ai3, and marked "received" in MBUSI's internal inventory system; and title to parts received at Ai3 is transferred to MBUSI upon arrival to Ai3. (Doc 97, Ex. I, Waggoner Aff. ¶ 6). MBUSI pays or indirectly pays for the shipment of some, but not all of the parts, to its plants. (Doc. 98, Ex. 15, Waggoner Dec. ¶5).

Admit third paragraph.

C.     <u>MBUSI Local Suppliers.</u>  Admit first paragraph.

Admit second paragraph with clarification.  The assembly of the fuel tanks during the relevant period at both ARD and Span, involves manually snapping a filler pipe into a fuel tank *and* by attaching clips to tanks. (Doc 97, Ex. H, Moore Dec.).

Admit third paragraph with clarification.  Parts are brought to Ai3 and sequenced so that, upon arrival at the production line, the parts will come off the truck in the order they will go into the cars. (Doc. 97, Ex. K, Smith Depo, pg. 154).

D.     <u>Ai3.</u>  Deny first sentence of first paragraph.  Ai3 is not a "supplier" of MBUSI. (See Doc 97, Ex. N).  Admit second sentence with clarification.  Ai3 is immediately adjacent to the MBUSI plants; the only reason it is five miles driving distance from MBUSI is because drivers are required to enter the MBUSI plant

through Gate No. 2, which is approximately five miles driving distance from Ai3. (Doc. 97, Ex. K, Smith Depo., pg. 123). Deny last sentence. Not all drivers travel on public roads to and from Ai3. Yard truck drivers do not typically take yard trucks onto public roads. (Doc. 99, pg. 10, Section F).

Admit, in part, first sentence of second paragraph. MBUSI has leased and utilized Ai3 since 2004, but Ai3 is not a "supplier" of MBUSI. (See Doc. 97, Ex. N). Admit remainder of paragraph with clarification. MBUSI deems a part "received" when it arrives at Ai3, and marked "received" in MBUSI's internal inventory system; and title to parts received at Ai3 is transferred to MBUSi upon arrival to Ai3 (Doc. 97, Ex. I, Waggoner Aff. ¶ 6).

Admit third paragraph with clarification. Many of the parts that pass through Ai3 that originate outside of Alabama stop first at the other suppliers' facilities before coming to rest at Ai3. (Doc. 97, Ex. M, Rodman Aff. ¶ 4; Ex. C, Dalton Aff. ¶ 6; Ex. E Osment Aff. ¶ 9) ; (Doc. 99, pg. 4, Section C).

Admit fourth paragraph.

Admit fifth paragraph with clarification. Cross dock parts are entered into the SAP inventory and are deemed received by MBUSI when they arrive at Ai3. (Doc. 98, Ex. 25, Klein Depo. pg. 45); (Doc. 97, Ex. I, Waggoner Aff. ¶ 6).

Admit sixth paragraph with clarification. Regardless of whether parts remain at Ai3 for hours, days, weeks or months, MBUSI considers them

"received" when they arrive at Ai3, they are entered into MBUSI's internal inventory system upon arrival at Ai3, and title to the parts is transferred to MBUSI upon arrival to Ai3. (Doc. 97, Ex. I, Waggoner Aff. ¶ 6).

E.    Other Logistics Suppliers.    Admit, in part, first sentence of first paragraph. ARD and Ai3 are not competitors. There is no evidence of such in the record. Admit second sentence with clarification. Many of the parts that originate outside Alabama undergo further assembly, manufacturing and/or sequencing processes at ARD. (Doc. 97, Ex. M) Admit, in part, the remainder of the paragraph. Prior to June 2007, the ARD Fuel Tanks route driven by Plaintiffs contained fuel tanks that were sub-assembled at the ARD facility, which included attaching nozzles and clips onto the tanks, and then loaded upon trucks containing only fuel tanks for daily delivery to MBUSI, via Averitt. (Doc. 97, Ex. H, Moore Dec.).

Admit second paragraph.

Admit third paragraph with clarification. Some, but not all, of the trucks picked up at AGC contain glass specially manufactured for MBUSI. (Doc. 98, Ex. 20, Freeze Aff. ¶ 5). AGC also sells parts to entities other than MBUSI, including Honda, Hyundai, and Mitsubishi. (Doc. 98, Ex. 20, Freeze Aff. ¶ 13).

Admit first sentence of fourth paragraph with clarification. Ninety percent (90%) of the body side moldings are assembled in Carrolton, Georgia; ten percent

(10%) are assembled in McCalla, Alabama. (Doc. 98, Ex. 19, Watts Aff.¶4). Deny second sentence. Brose is a manufacturing/assembly facility that assembles and supplies door systems to MBUSI. Completed door systems are delivered to MBUSI each day. (Doc. 97, Ex. E, Osment Aff. ¶ 6). Further, by Defendant's own admission, Brose is a manufacturing facility. (Doc. 97, Ex. B).

F.    Job Duties of Local Fleet.  Admit first paragraph.

Admit second paragraph with clarification. The list of suppliers to MBUSI does not change daily, or even frequently. The Defendant has brought forth no evidence of such "daily" adaptations due to MBUSI changing its vehicle mix, production schedule, or suppliers.

Admit third paragraph with clarification. Drivers are assigned a route by Averitt management when they first come to work at Averitt and may be moved from route to route until the semi-annual route bidding occurs. (Ex. B, Henry Depo., pg. 33-36); (Ex. C, Spencer Depo, pg. 70). All drivers receive a route as a result of the bidding process, even if not his first choice, and they are expected to run that route until the next route bidding takes place. (Ex. D, Turner Depo., pg. 58-60); (Ex. E, Spigner Depo., pg. 51-52); (Ex. F, Smoot Depo., pg. 53-54); (Ex. C, Spencer Depo., pg. 73-38).

Admit fourth paragraph with clarification. Plaintiffs seek to clarify the Defendant's use of the work "bumped." Less senior drivers can be moved from

their routes during the bid process by being "bumped" (out-bid) by a more senior driver. However, every driver places a bid and receives a route as a result of that bid in the end. (Ex. G, Pruitt Depo., pg. 66-67). Assigning routes by seniority gives both the Defendant and the Plaintiffs an expectation that a driver will remain on a given route for a six-month period. (Doc. 97, Ex. K, Smith Depo., pg. 129-131, 133).

Admit fifth paragraph with clarification. Temporary drivers (drivers who work via employment agencies at Averitt) and backup drivers/floaters (Averitt drivers not assigned to a regular route) are used to fill in and cover routes for absent Averitt employees. (Doc. 97, Ex. J, Roberts Depo., pg. 80; Ex. K, Smith Depo, pg. 134, 136-138, 139-140). If a situation arises where an Averitt employee needs to cover an extra route, Averitt uses a voluntary system of asking drivers in order of seniority beginning with the most senior driver. (Doc. 97 Ex. J, Roberts Depo., pg. 81). The Site Manager at MBUSI has never punished a driver for refusing to take an extra run. (Doc. 97, Ex. K, Smith Depo., pg. 102).

Admit sixth paragraph with clarification. Most of the Plaintiffs have never driven out of state while working for Averitt, and have never even been asked to do so. (Ex. G, Pruitt Depo., pg. 48); (Ex. F, Smoot Depo., pg. 56-57); (Ex. C, Spencer Depo., pg. 90-91). Additionally, many of the drivers asked to go out of

state declined and were not punished for doing so.  (Ex. H, Kelly Depo., pg. 161-162); (Ex. I, Lake Depo., pg. 102-103).

G.  <u>Ogihara.</u>  Admitted.

H.  <u>Classification of Local Drivers.</u>  Admitted with clarification.  All Averitt employees undergo uniform training and have to meet uniform requirements set forth by Averitt.  (Ex. J, Leeson Depo., pg. 14, 20-22, 24-25, 38-39).

I.  <u>FLSA Compliance.</u>  Denied.  Averitt did not undertake to determine its compliance with the FLSA. Averitt requested the opinion of outside counsel regarding its classification of drivers as exempt in late 2006 as a result of complaints from its local drivers.  (Doc. 98, Ex. 23, Singer Depo., pg. 71-72); (Doc. 98, Ex. 11, Singer Dec. ¶ 11).  The outside counsel sought formed an opinion the drivers were exempt without performing a thorough review.  (Ex. L, Anderson Depo., pg. 48-49).  In addition, Mr. Singer made no effort to determine the proper classification of local drivers at MBUSI when he first took over his position as Vice President.  (Doc. 98, Ex. 11, Singer Dec. ¶11).

## ARGUMENT

**A.  Defendant's Universal Motion for Summary Judgment**

**1.  <u>DOL/DOT jurisdiction.</u>**

Defendant asserts that Plaintiffs cannot be subject to both the FLSA and the MCA simultaneously, and that any ruling of this Court will divest one of these agencies of jurisdiction over the local drivers. (Doc. 99, pg. 18). Defendant is incorrect. Periodic activity in interstate commerce does not subject the carrier to continuous ongoing jurisdiction. *Morrison v. Quality Transports Svcs, Inc.*, 474 F.Supp.2d 1303, 1312 (S.D. Fla. 2007). Rather, an employee is either entitled to overtime or not, *for specific periods of time*. *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1156 (9th Cir. 1994) (emphasis supplied).

Similarly, the analysis of whether an employee is exempt from overtime is not performed on a group basis, but instead "depends upon the activities of the individual employees." *McGee v. Corporate Express Delivery Systems*, Not Reported in F.Supp.2d, 2003 WL 22757757 at *3 (N.D. Ill. Nov. 20, 2003) (quoting *Goldberg v. Faber Indus.*, *Inc.*, 291 F.2d 232, 235 (7th Cir. 1961)). The employer must show that *each individual employee* engaged in activities that directly affect the safety or operation of motor vehicles in interstate or foreign commerce. *See Morrison v. Quality Transport Svcs., Inc.*, 474 F.Supp.2d 1303, 1309 (S.D. Fla. 2007) (emphasis supplied); *see also* 29 C.F.R. § 782.2(b)(3) (using the term "driver" to determine the applicability of the exemption).

Defendant, in disregard of the actual letter of the law, believes it is not a feasible ongoing business practice to constantly examine the circumstances of each

driver. This is simply not true. Defendant knows what routes plaintiffs are driving because of their assignment procedure, and knows what route each employee actually travels each day through their time sheets. Defendant knows which routes would be properly classified as exempt; therefore, it would not be difficult to delineate on which routes drivers should be paid overtime and which routes drivers should be paid straight-time.

In fact, Plaintiffs, in pursuit of this litigation, created a database (Ex. K) from the information supplied by the Defendant which does exactly what Defendant said was too difficult: it tracks the circumstances of each driver to determine whether the driver is traveling inter- or intrastate routes and for which periods of time. For those periods of time that the drivers make interstate trips, the week by week exemption or the 14/15-day time period could easily be applied.[7]

Since Defendant here has not demonstrated that *each individual employee* is engaged in activities that directly affect the operation of motor vehicles in interstate commerce, the Defendant cannot, and has not, met its burden to prove the Motor Carrier exemption applies. Accordingly, Defendant's Universal Motion for Summary Judgment should be denied.

**2. <u>Averitt drivers who are assigned to intrastate routes do not have a reasonable expectation of driving in interstate commerce</u>.**

---

[7] Defendant too created such a database. (Doc. 98, Ex. 8).

As more fully explained in Plaintiffs' Memorandum in Support of their Motion for Partial Summary Judgment, Defendant assigns both regular and "extra" routes based on seniority. (Doc. 96, pg. 16-21). Further, as demonstrated, *infra*, very few (if any) in-state facilities can be properly labeled "interstate routes." Accordingly, Defendant cannot show that local drivers, once assigned to an intrastate route, are reasonably likely to drive in interstate commerce.

Defendant cites to *Chao v. First Class Coach Co., Inc.*, 214 F. Supp.2d 1263 (M.D. Fla. 2001) to support its assertion that routes do not have to be assigned indiscriminately for the exemption to apply, but that case is distinguishable. In *Chao*, though the employer did try to honor the requests of some of its employees with respect to its routes, the drivers could at any time be assigned to *any* route. *Id.* at 1275-1276. In *Chao*, the assignment of a route on any given day remained within the discretion of the employer. *Id.* Averitt drivers, however, bid on routes that they retain for at least a six month basis, though as a practical matter, a driver with sufficient seniority to bid on a route can keep the route indefinitely. Accordingly, routes are not handed out on an indiscriminate or random basis, but instead are assigned through an organized system of seniority-based bidding on six-month cycles. Further, Averitt drivers are not punished for refusing to run an extra route. (Doc. 97, Ex. J, Roberts Depo, pg. 81-82).

Because routes are not assigned indiscriminately, the likelihood that a driver who is assigned to an intrastate route would be called upon to handle an interstate trip is remote. Defendant has not met its burden of showing that Plaintiffs have a reasonable expectation of driving an interstate route, Defendant's Universal Motion for Summary Judgment should thus be denied.

### B. Defendant's Alternative Motions for Summary Judgment

#### 1. <u>Defendant cannot show it acted in good faith and without willfulness when it improperly classified Plaintiffs as exempt from the FLSA.</u>

Defendant contends it acted in good faith in denying overtime to its local drivers and it did not willfully misclassify its local drivers. The effect of granting these alternative motions would eliminate liquidated damages and reduce the relevant time period from 3 years to 2 years. In the Eleventh Circuit, liquidated damages are mandatory absent a showing of good faith. *Joiner v. City of Macon, 814 F.2d 1537, 1539 (11th Cir 1987)*. To establish the defense of good faith, the employer has "the burden of proving it had an honest intention to ascertain what the FLSA required and an honest intention to act in accordance with such requirements." *Duncan v. Brockway Standard, Inc., 1992 WL 510256 at *5 (N.D.Ga. Sept. 21, 1992)*. Furthermore, establishing the defense of good faith is a mixed question of law and fact, and the factual component is best left to the fact finder to determine. *Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562,*

1567, n.6 (11th Cir. 1991); *Allen v. Board of Public Educ. for Bibb County*, 495 F.3d 1306, 1323 (11th Cir. 2007).

Defendant cannot show that it acted in good faith and was not willful in denying overtime to local drivers.  For good faith, Defendant offers that it pays overtime to some hourly drivers at other locations, because the local drivers who receive overtime are part of a separate class than the Averitt dedicated drivers.  (Doc. 98, Ex. 11, Singer Dec. ¶12).  However, "[t]he exemption depends upon the activities of the individual employees."  *McGee v. Corporate Express Delivery Systems*, Not Reported in F.Supp.2d, 2003 WL 22757757 at *3 (N.D. Ill. Nov. 20, 2003) (quoting *Goldberg v. Faber Indus.*, *Inc.*, 291 F.2d 232, 235 (7th Cir. 1961)).

In addition, Defendant claims it sought and relied upon the opinion of outside counsel in 2006, but says nothing of its endeavors to assure compliance with the FLSA prior to that time frame.  Indeed, the opinion was based on the job itself and not on an individualized inquiry of the various drivers.  The Defendant admits it employs a blanket classification based not on differences in an individual driver's routes on a particular day, but on the responsibilities its drivers collectively share, which, is an incorrect analysis.

Because Defendant cannot show it acted in good faith or that it was not willful in classifying its local drivers as exempt and because these matters are more

appropriate for the fact finder, Defendant's Alternative Motions for Partial Summary Judgment based on good faith and willfulness should be denied.

**2. If any Plaintiffs are exempt from the FLSA, the period of exemption is week-by-week, not for a 4-month period.** [8]

Plaintiffs who drove interstate routes should be exempt for a week-by-week period, or in the alternative, the 14/15-day period. Though Defendant claims the exemption period is 4-months, this is not the law under the MCA; rather, the period of exemption is week-by-week. 29 C.F.R. § 782.2(b)(3) ("the exemption will apply to him only in those workweeks in which he engages in such activities"). *See also Roger Cartage Co. v. Reynolds*, 166 F.3d 317 (6th Cir. 1948) (citing *Levinson v. Spector Motor Servs.*, 330 U.S. 649, 685 (1947); *see also Crooker v. Sexton Motors, Inc.*, 469 F.2d 206, 211 (1st Cir. 1972) (court found that plaintiff was entitled to receive overtime pay for all work weeks in which he did not drive in interstate commerce).

Defendant relies on the Field Operations Handbook, which states that the "DOT will assert jurisdiction over that employee for a 4-month period beginning with the date they could have been called upon, or actually did, engage in the carrier's interstate activity." However, the agency's interpretation is inconsistent

---

[8] To facilitate organization and understanding, this brief will address all of Defendant's contentions regarding the 4-month exemption period together as opposed to following the structure of Defendant's motion. Accordingly, this section of Plaintiffs' argument encompasses Defendant's general assertions regarding the exemption period, as well as each specific motion Defendant has filed seeking application of the exemption.

with the regulation, and thus should be accorded no deference. *See Christensen v. Harris County*, 529 U.S. 576, 587-88 (2000) (an interpretation of a regulation must not be affirmed where it is plainly erroneous or inconsistent with the regulation itself). In addition, Defendant does not even rely on the most recent interpretation by the DOL, which calls for a 14-day rule. *See* Ex. A, FMCSA Jurisdiction to Regulate the Qualifications and Maximum Hours of Service of CMV Drivers (February 9, 2000) ("[I]n the interest of simplicity and workability, I have decided to replace the so-called 4-month rule with a 14/15- day rule.").

### 3. Defendant cannot demonstrate that routes to Ai3, ARD, ARD Fuel Tanks, ARD/JVC, Borgers, Decoma, AGC, Brose and/or Span are interstate routes.

As more fully explained in Plaintiffs' memo in support of their motion for summary judgment (Doc. 96, pg. 21-32), if goods come to rest within a state, the purely intrastate segments of deliveries from out-of-state suppliers are not part of interstate commerce. *Kimball v. Goodyear*, 504 F.Supp. 544, 547 (E.D. Tex. 1980) (*citing Galbreath v. Gulf Oil Corp.*, 413 F.2d 941, 944) (5th Cir. 1969)). For goods to be deemed to have "come to rest" within the state, the mere processing or modification of a product can interrupt the continuity of transit between its out-of-state origin and the ultimate destination. *Kimball,* 504 F.Supp. at 547 (processing of crude oil into various hydrocarbon streams broke the continuity of transportation); *see also Alice v. GCS, Inc.*, Slip Op. No. 05-c-50132, 2006 WL

2344958 (N.D. Ill., Sept. 14, 2006) (the separating, sorting and commingling of refuse sufficiently interrupted the continuity of interstate movement).

When goods are delivered from out of state to a storage facility, intrastate transportation of goods from the storage facility does not constitute interstate commerce if the shipper[9] had no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment. 29 C.F.R. §782.7(b)(2). It is the intent at the time transportation commences that "fixes the character of the shipment for all the legs of the transport within the United States." *Saldibar*, 2008 WL 755265 at *3; *Bilyou*, 300 F.3d at 223-224.

The following facilities are examples of how processing or modification can interrupt the flow of interstate commerce such that the products are deemed to have come to rest within the state.

    a.    <u>Ai3.</u>    As discussed more fully in Plaintiffs' initial brief summary (Doc. 96, pg. 27-31), no out-of-state shipper of products to MBUSI has a fixed and persisting intent for their products to travel beyond Ai3. 29 C.F.R. § 782.7(b)(2). All shipments received by Ai3 are directed to MBUSI, become the property of MBUSI upon arrival at Ai3, and are placed in warehouse space leased to MBUSI. The evidence also demonstrates that the goods are entered into MBUSI's inventory upon arrival at Ai3 and that the Ai3 facility has no meaningful and distinct identity

---

[9] For purposes of the Motor Carrier Act, a shipper is a person who sends or receives property which is transported in interstate or foreign commerce. 49 C.F.R. § 376.2(k).

from MBUSI.  (Doc. 97, Ex. H).  Under [29 C.F.R. § 782.7(b)(2)](), the intent of the shipper was for goods to be delivered to Ai3; there is no intent of the shipper to deliver to the production line.  Accordingly, for any goods moving in the stream of commerce upon arrival to Ai3, that movement ceases at Ai3.

b.    ARD routes, including ARD, ARD Fuel Tanks and ARD/JVC.  ARD is a facility that assembles some parts and sequences other parts for delivery to MBUSI.  As explained more fully in Plaintiffs' initial brief, (Doc. 96, pg. 26-33), for those parts that are sequenced and inspected at ARD, they have come to rest at the facility before being supplied to the Ai3 facility.  MBUSI does not dictate what suppliers must be used by ARD; rather, ARD chooses it suppliers, receives those parts from the suppliers, sequences and inspects those parts, performs light sub-assembly on some of those parts, and then arranges for them to be transported, via Averitt, to MBUSI's warehouse ([Ai3]()).  (Doc. 98, Ex. 17, Rodman Dec. ¶ 6-8).  Further, ARD's suppliers are not MBUSI suppliers (Doc. 97, Ex. M and N); thus the goods have come to rest within the state at ARD.

Prior to June, 2007, there was a route from ARD to MBUSI driven by Plaintiffs called "ARD Fuel Tanks."  The trucks driven by the Plaintiffs on the ARD Fuel Tank route only contained fuel tanks.  Fuel tanks were sub-assembled at the ARD facility and then loaded upon trucks for delivery to MBUSI, via Averitt.  Because of the sub-assembly processes that took place, the continuity of interstate

transportation of fuel tanks traveling through ARD was broken.  (See Doc. 96, pg. 26-27).[10]

With regard to the ARD/JVC route, in addition to the fact the sequencing causes a break in the flow of goods in interstate commerce, there is no evidence of the shippers' intent for good to move beyond either ARD or JVC, and on to Ai3. (See, Doc. 96, pg. 31-33).  Accordingly, for any goods moving in the stream of commerce upon arrival to ARD or JVC, that movement ceases at ARD and/or JVC.

c.    Borgers.  The Borgers facility contains both parts that are sequenced and parts that are first sub-assembled and then sequenced.    Because of this sequencing and subassembly, these goods undergo a distinct change in character.  Sequencing is a vital component to the MBUSI's "just in time" delivery system and without which the production line at the plant would shut down.  (Doc. 97, Ex. L).  Because this process is so vital to MBUSI's operations, the sequencing of the parts significantly adds value to the product and therefore constitutes a material alteration.  *Id.*

In *Alice v. GCS, Inc.*, various pieces and parts of refuse were separated, sorted and commingled at a facility in-state before being hauled out of state to

---

[10] Defendant acknowledges that Span is the supplier for the very same fuel tanks which were previously supplied by ARD and which go through a subassembly process which involves attaching clips and nozzles onto the fuel tanks.  (Moore Dec., Ex. H).  Therefore, the discussion regarding the fuel tanks at ARD encompasses the fuel tanks assembled at the Span facility from June, 2007, to the present.

another facility. *Alice*, Slip Op. No. 05-C-50132 (N.D. Ill. Sept, 14, 2006). The Court held that this separating, sorting and commingling to create a useable commodity sufficiently interrupted the continuity of movement of the original product and therefore it was not interstate commerce. *Alice*, Slip Op. No. 05-C-50132 at *4.

The sequencing that occurs at Borgers and other facilities is comparable to the separating and sorting involved in *Alice*. Without sequencing, MBUSI's assembly lines cannot function. Like separating and sorting refuse into useable goods, sequencing adds value to the parts that enter MBUSI's production process. Thus goods moving through Borgers are no longer in the stream of interstate commerce.

Defendant's reliance on the Fifth Circuit case of *Texas v. U.S.* for the proposition that the carpet sequenced at the Borgers facility remains in interstate commerce is inapposite. *Texas*, 866 F.2d 1546 (5th Cir. 1989). *Texas* involved a review of an ICC decision, which involved a Georgia company shipping carpet to a Texas warehouse the Georgia company owned, storing it there for a short period of time, and then shipping the carpet on to its final destinations in the state of Texas and beyond. *Id.* Here, an entity separate and apart from MBUSI (Borgers) orders carpet, sequences the carpet according to MBUSI's specifications, and then arranges for Defendant to ship the carpet to MBUSI's plant. (Doc. 98, Ex. 18,

Soeherman Aff. ¶4). In *Texas*, the ICC, in making its determination that the carpet remained in interstate commerce, relied on the fact that the carpet was not 'processed or commingled in any way to cause it to lose the identity it had when it left Dalton." *Texas*, 866 F.2d at 1556. As shown above, the carpet at Borgers undergoes a distinct change in character and value, thus removing it from interstate commerce.

       d.    <u>Decoma</u>.  The Decoma facility assembles, sequences, and supplies parts to MBUSI.  The Decoma facility in McCalla, Alabama, provides front and rear fascia assemblies, rocker panels, body side moldings, fender flares, and antenna covers.  The finished assemblies are then sequenced, loaded and delivered to the MBUSI plant.  As more fully explained *supra*, the assembly process and the sequencing process as stated above provide an added value to the goods and thus remove them from the stream of interstate commerce.  *Alice*, Slip Op. No. 05-C-50132 (N.D. Ill. Sept. 14, 2006).

       Decoma contracts with 45 different suppliers to deliver parts to the McCalla facility.  (Doc. 98, Ex. 19, Watts Aff. ¶ 5).  MBUSI does not dictate what suppliers may be used for its parts; rather, Decoma contracts with these out-of-state suppliers to receive the many individual parts necessary to create the fascia assemblies, and MBUSI contracts with Decoma for the finished assemblies.  *Id.*  Therefore, there is

no "fixed and persisting" intent beyond the arrival of the parts at the Decoma facility.  *See,* [29 C.F.R. §782.7(b)(2)](#).

 e. <u>AGC</u>.  AGC is an operations facility that assembles automotive glass and applies labels to racks of pass through parts to be sold to MBUSI. (Doc. 98, Ex. 20, Freeze Aff. ¶4).  Defendant agrees that AGC performs various "value added" processes on raw glass, such as PVC encapsulation, heat and resistance soldering, assembly of clips, hand-application of extruded moldings, machine-application of rain sensors and A pillars, hand application of Tesa tape, and hand-application of a promoter and primer. (Doc. 98, Ex. 20, Freeze Aff. ¶ 5). In addition to MBUSI, AGC provides automotive glass to Honda, Hyundai, and Mitsubishi.  (Doc. 98, Ex. 20, Freeze Aff. ¶ 13).  The various glass parts, after having undergone their value added processes, are sequenced and labeled in the manner dictated by MBUSI- the manner necessary for MBUSI's production line to avoid shut down.  As more fully explained *[supra](#)*, the assembly process and the sequencing process provide an added value to the goods and thus remove them from the stream of interstate commerce.  *Alice*, Slip Op. No. 05-C-50132 (N.D. Ill. Sept, 14, 2006); *see also* *[Kimball v. Goodyear, 504 F.Supp. 544, 547 (E.D. Tex. 1980)](#)* (the processing or modification of a product can interrupt the continuity of transit).

 f. <u>Brose.</u>  As explained more fully in Plaintiffs' initial brief (Doc. 96, pg. 24-27), Brose is a production facility that supplies MBUSI with door systems.  The

assembly process at Brose involves riveting pulleys to metal guide rails, attaching metal brackets, and applying foam seal. Each door module that Brose supplies to MBUSI contains a locking rod assembly, each of which consists of two components which Brose assembles, consisting of a locking rod and a rubber gasket. All of these processes together result in the creation of individual completed door systems. Completed door systems are delivered to MBUSI via Averitt. (Doc. 97, Ex. E). In fact, the Defendant admits that Brose is a manufacturing facility. (Doc. 97, Ex. B); *see also Kimball v. Goodyear*, 504 F.Supp. 544, 547 (E.D. Tex. 1980) (the processing or modification of a product can interrupt the continuity of transit such that product will be deemed to have "come to rest" within the state).

**4. A determination regarding whether floaters are exempt from the FLSA cannot be made until the Court rules on the inter- vs. intrastate status of the facilities, above.**

The determination of floaters' exempt status cannot be made until the Court has made a determination regarding what facilities, if any, are interstate facilities. If the total number of runs by floaters to interstate facilities is found to be *de minimus*, even floaters will not fall within the exemption of the Motor Carrier Act. 29 C.F.R. § 782.2(b)(3). *See Kimball*, 504 F.Supp. 544, 549 (truck drivers were not exempted from the overtime provision where only 0.17% of trips were

interstate).[11]  Because floaters may not be exempt and Defendant's request for a 4-month period is not the law, its alternative motion for partial summary judgment for Plaintiffs who were assigned duties as "floater" should be denied.

### 5.  Alternative motion for summary judgment for individual Plaintiffs

Defendant has filed 21 separate alternative motions for partial summary judgment with respect to named Plaintiffs in this action.  All of these 21 motions fail.  No Plaintiff, unless assigned to an interstate route for the entire period of their employment, would be exempt for the entire period of their employment.  Periodic activity in interstate commerce does not subject the carrier to continuous ongoing jurisdiction.  Furthermore, the Defendant has failed to show that Ai3, ARD, ARD Fuel Tanks, ARD/JVC, Span, Borgers, Decoma, AGC and Brose facilities are interstate facilities.   In fact, as Plaintiff has made evident, these routes are *intrastate* routes, and thus Plaintiffs are entitled to receive overtime pay for all workweeks during which they drove routes to these facilities, and did not drive interstate routes.

Because Defendant cannot show that Plaintiffs are entitled to summary judgment for all periods of their employment, or even that they are entitled to partial summary judgment for a period of 4-months from those times that Plaintiffs

---

[11]    If Plaintiffs who were assigned duties as a "floater," are found to be exempt from the FLSA, the applicable period of exemption is week by week or, in the alternative, on a 14/15-day period of exemption. (See, *supra*).

were assigned as floaters or assigned to an interstate route, Defendant's 21 alternative motions for partial summary judgment with respect to the named Plaintiffs should be denied in their entirety.

## C. CONCLUSION

As Plaintiffs have more thoroughly explained in their brief in support of their motion for partial summary judgment (Doc. 96), the Motor Carrier Act is to be narrowly construed against the employer seeking to assert it. *Auer v. Robbins, 519 U.S. 452, 462 (1997)*; *quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)*. Furthermore, it is the defendant's burden to prove the exemption. *Rodriguez v. Whiting Farms, Inc., 360 F.3d 1180 (10 Cir. 2004)*. Where the employer fails to meet its burden of showing the employee meets every aspect of the definition for an exempt employee, the defendant's motion for summary judgment is appropriately denied. *IntraComm, Inc. v. Bajaj, 492 F.3d 285 (4th Cir. 2007)*; *Saldibar v. Delray One, Inc., Slip Copy, 2008 WL 755265* at *6 (S.D. Fla. Feb. 20, 2008); *Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir. 2004)*.

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Universal Motion for Summary Judgment and the Alternative Motions for Partial Summary Judgment be denied. Defendant has not met its burden and its motions are based on an improper application of the law under the Motor Carrier Act and

the Fair Labor Standards Act. Consequently, Defendant's motions are due to be denied and Plaintiffs' Motion for Partial Summary Judgment should be granted.

Respectfully submitted to this Court on August 18, 2008.


                                    s/  Andrew C. Allen
                              Andrew C. Allen


OF COUNSEL:

Andrew C. Allen
Richard P. Rouco
Stephanie N. Johnson
Whatley, Drake & Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, AL 35203
Telephone:  205-328-9576
Facsimile: 205-328-9669
aallen@wdklaw.com
rrouco@wdklaw.com
sjohnson@wdklaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following, on the 18th day of August, 2008, to the following:

Thomas Anthony Swafford
Kara E. Shea
MILLER & MARTIN PLLC
1200 One Nashville Place
150 Fourth Avenue, North
Nashville, TN  37219

Richard F. Ogle
CHRISTIAN & SMALL, LLP
505 North 20th Street
Suite 1800
Birmingham, Alabama  35203

_____/s/ Andrew C. Allen_____
OF COUNSEL